

2006-31303

NO. _____

| | | |
|---|---|---|
| **ELIZABETH A. GILMORE,** § | | IN THE DISTRICT COURT OF |
| *Plaintiff* § | | |
| v. § | | HARRIS COUNTY, TEXAS |
| **FULBRIGHT & JAWORSKI L.L.P.,** § | | |
| *Defendant* § | | 151 JUDICIAL DISTRICT |

### PLAINTIFF'S ORIGINAL PETITION

COMES NOW ELIZABETH A. GILMORE, Plaintiff herein, by and through her undersigned attorney, complaining of FULBRIGHT & JAWORSKI L.L.P., Defendant herein, and for cause of action says:

### Parties

1. PLAINTIFF ELIZABETH A. GILMORE is an individual residing in Spring, Harris County, Texas.

2. DEFENDANT FULBRIGHT & JAWORSKI L.L.P. is, and at all times material hereto was, a limited liability partnership organized under the laws of the State of Texas. Because at least one of its members/partners is a resident of Texas, Defendant is a citizen or resident of Texas. Defendant may be served with process by serving a member or partner, including but not limited to D. Dudley Oldham or William R. Pakalka, at Fulbright Tower, 1301 McKinney, Suite 5100, Houston, Texas 77010. Citation served on one member of a partnership authorizes judgment against the partnership and the partner actually served. Tex.Civ.Prac. & Rem. Code § 17.022.

## Jurisdiction

This Court has jurisdiction over Defendant because it is a Texas citizen. This Court has jurisdiction over the controversy in this case because the events giving rise to such controversy occurred in Texas.

## Venue

Venue over the case at bar lays in Harris County, Texas, because all or a substantial part of the events, omissions, or both, giving rise to Plaintiff's claims occurred in Harris County, Texas. Tex. Civ. Prac. & Rem. Code § 15.002(a)(1).

## Statement of Facts Applicable to All Counts

1. Following a history of various symptoms and conditions, including but not limited to, autoimmune hepatitis, a persistent skin rash, jaundice, nausea, abdominal pain, neck pain, back pain, profuse sweating, cold and heat intolerance, subjective fever, constantly feeling feverish/hot, hair loss, change in hair texture, nose bleeds, dry eyes, dry mouth, gastrointestinal problems, physical exhaustion, pain in both hips, fingernails separating from the nail beds, hand tremors, taunt veins, dizziness, short and long term memory lapses, heart palpitations, anxiety, and high blood pressure. Plaintiff, a legal secretary employed by Defendant, was diagnosed with "temporary thyroiditis" in June 2004, and toprol XL (beta blocker) was prescribed for Plaintiff's heart palpitations and high blood pressure.

2. In August 2004, because Plaintiff's symptoms persisted, additional blood work and an ultrasound of Plaintiff's thyroid were performed. Plaintiff was diagnosed with Grave's disease (autoimmune hyperthyroidism). She had a nodule on the left side of her neck. She was prescribed methimazole (an anti-thyroid medication) and lorazepam (an anti-anxiety medication).

Plaintiff lost her secretarial assignment about this time. Plaintiff later became hypothyroid and became unusually emotional, crying for no reason, became constipated, had muscle cramps, and was physically exhausted. Plaintiff was started on lexapro for depression.

3. Plaintiff began short-term disability/FMLA leave and underwent surgery on or about Monday, December 20, 2004, for the removal of the thyroid nodule. Following the surgery, she was told that she did not have a right lobe or right isthmus of her thyroid, and only had a nodule on her left side that had become autonomous and was pouring triiodothyronine (T3) into her bloodstream. She was, also, told that she did not have any parathyroid glands which regulate calcium levels in the body and was likely causing her load bearing joints to ache badly, and likely why her fingernails were separating from their nail beds.

4. In January 2005, Plaintiff was taken off levothyroxine (T4 hormone replacement) and was started on levoxyl (a different T4 hormone replacement). Since she was no longer feeling depressed, she stopped taking the lexapro.

5. On Monday, January 31, 2005, Plaintiff called Brenda Pittman, her supervisor, to request a 30 day personal leave of absence.

6. Not having heard back from Brenda Pittman regarding her request for a 30 day personal leave of absence, Plaintiff called Ms. Pittman again on Thursday, February 3, 2005.

7. On February 4, 2005, late Friday afternoon, Brenda Pittman instructed Plaintiff to call Dorothy Jenkins in Human Resources regarding her request for a 30 day personal leave of absence.

8. On Monday, February 7, 2005, Plaintiff tearfully spoke with Dorothy Jenkins regarding her request for a 30 day personal leave of absence.

9. On Tuesday, February 8, 2005, Dorothy Jenkins left a voice mail message for Plaintiff stating that her request for a 30 day personal leave of absence had been granted.

10. In February 2005, Plaintiff's health problems, combined with her stopping the lexapro, caused her to suffer from major depression. She was unable to bathe herself, make a simple telephone call, leave her house, or even get out of bed. Plaintiff's hair continued to fall out, the hand tremors were uncontrollable, and she cried constantly. Going to the restroom was like traveling to another continent. She was sleeping 15 or more hours a day. A friend pointed out that Plaintiff was depressed, so she restarted taking the lexapro.

11. In March 2005, Plaintiff was feeling better but was not well enough to return to work.

12. On Friday, March 11, 2005, Plaintiff's husband called Dorothy Jenkins regarding the status of Plaintiff's health. Ms. Jenkins told Plaintiff's husband that Plaintiff had to obtain a physician's statement/authorization for additional absence time from work.[1] Plaintiff's husband told Ms. Jenkins that he would schedule an appointment for Plaintiff with her endocrinologist and would call her back with the date of such appointment. That very day, Plaintiff's husband contacted her endocrinologist's office to arrange an appointment, and was told that the endocronologist was on vacation for two weeks and that he would return to the office on Tuesday, March 15, 2005. Plaintiff's husband spoke with the endocronologist's nurse regarding Plaintiff's health status. The nurse referred her husband to a doctor specializing in hormones (a

---

[1] The policies and procedures of Defendant in place at or around this time permitted requests for extensions of employee personal leaves of absence in conjunction with short-term disability/FMLA leave.

psychiatrist). Plaintiff's husband telephoned the psychiatrist's office, and left a voice mail message requesting an appointment.

13. On Monday, March 14, 2005, the psychiatrist returned Plaintiff's husband's telephone call and scheduled an appointment for Plaintiff for Tuesday, March 22, 2005.

14. On Monday, March 14, 2005, Plaintiff's husband also scheduled an appointment for her with her endocrinologist for the earliest date he could get.

15. On Tuesday, March 15, 2005, Plaintiff's husband left a voice mail message for Ms. Jenkins informing her that Plaintiff had an appointment with her endocrinologist on Monday, March 21, 2005, and informing Ms. Jenkins that that was the earliest available date for an appointment.

16. On or about Tuesday, March 15, 2005, Jane Williams, the Director of Human Resources, sent Plaintiff a letter via First-Class United States mail informing Plaintiff that she had been terminated effective that day (three business days before Plaintiff's five-year anniversary with the firm and seven business days before Plaintiff would have fallen under FMLA protection) because her FMLA leave ended on Friday, March 11, 2005,[2] and that she was unable to return to work at that time.

17. On Friday, April 22, 2005, Plaintiff left voice mail messages for Jane Williams and Brenda Pittman requesting re-hire.

---

[2]Plaintiff's short-term disability/FMLA leave had, in fact, ended prior to Friday, March 11, 2005, which is why Plaintiff had requested a 30 day personal leave of absence in February.

18. On Tuesday, April 26, 2005, not having received a return telephone call, Plaintiff again called Jane Williams, and spoke with her, regarding re-hire. Ms. Williams said that she did not believe that the firm had any secretarial openings but that she would call Plaintiff back after speaking with Brenda Pittman, Alicia Brantley and Janet Carter (the secretarial supervisors).

19. Not having heard anything from Ms. Williams by early May, Plaintiff left a voice mail message for her asking whether a decision had been reached regarding re-hiring Plaintiff.

20. In mid-July 2005, not having heard from Ms. Williams, Plaintiff called Ms. Williams and spoke with her regarding re-hiring her. Ms. Williams said that the firm did not have any available positions.[3] However, prior to contacting Ms. Williams, Plaintiff had spoken with Rhea Orr (Bill Pakalka's secretary) who told Plaintiff that she had just submitted two of her friends' resumes to Human Resources for current secretarial openings at the firm.

21. Defendant treated several other employees in the same or similar positions as Plaintiff differently than Plaintiff, including but not limited to, the following:

 (a) Defendant forewarned Nancy Nichols, another legal secretary, that she would be terminated if she missed any more time from work due to illness. Plaintiff received no such warning prior to termination.

 (b) Defendant created a special position for Cathy Nelson, another legal secretary, due to ongoing illnesses keeping her out of the office.

 (c) Belle Griffith, a legal assistant, retained her position after being in and out of the office for six months at a time due to cancer.

 (d) Gayle Bennington, another legal secretary, retained her position and was allowed extensive time off when she was out ill for an extended period of time.

---

[3] Baker Botts L.L.P. legal secretaries were being hired by Defendant during the period Plaintiff was requesting Defendant re-hire her, but Defendant informed Plaintiff there were no positions available.

(e) Jeanne Blakely, a lead billing clerk, was allowed late arrivals and early departures to accommodate her illness.

(f) Marjorie Hines, a proofreader, was allowed years of excessive absences, late arrivals, and early departures prior to her termination and was not ill.

(g) Lois Gurnick, another legal secretary, was re-assigned to a lighter secretarial assignment which required less overtime and less stress due to her ongoing stomach illness.

22. Plaintiff's annual salary with Defendant at the time of her termination was $47,800.00.

23. Plaintiff paid $541.00/month for COBRA health insurance benefits for nine months (March 2005 to November 2005) following her termination.

### Notice of Right to File a Civil Action

1. Plaintiff satisfied all conditions precedent to filing suit, and pursued all administrative procedures to completion.

2. On or about Friday, August 26, 2005, Plaintiff timely filed a claim with the Civil Rights Division of the Texas Workforce Commission.

3. On or about Tuesday, March 21, 2006 the Civil Rights Division of the Texas Workforce Commission issued a Dismissal and Notice of Right to File a Civil Action, giving Plaintiff until at least May 20, 2006 to file suit in State court. *Exhibit A.*

### Count One

For disparate treatment disability discrimination cause of action, Plaintiff says:

1. Plaintiff hereby adopts by reference each and every Paragraph of the Statement of Facts Applicable to All Counts of this Petition as if fully copied and set forth at length herein.

Respectfully submitted,

By: *Randal Kauffman*
Randal A. Kauffman
State Bar No. 10050700
P.O. Box 1211
Tomball, Texas 77377-1211
Telephone: (281) 290-9759
Facsimile: (281) 357-0745

ATTORNEY FOR PLAINTIFF

# Texas Workforce Commission
## Civil Rights Division



Mailing Address:   P. O. Box 13006
Austin, Texas 78711-3006 or
101 East 15th Street, Room 144T
Austin, Texas 78778

Phone Numbers:   Toll Free (888) 452-4778
FAX        (512) 463-2643
TX Relay (800) 735-2989
Main       (512) 463-2642

Equal Employment Opportunity

EQUAL HOUSING OPPORTUNITY

TO:   Randal A. Kaufman

FAX NO:   281/357-0745

PHONE NO:   281/290-9759

RE:   Elizabeth Gilmore

TWCCRD CHARGE NO:   1A50134-H

FROM:   Janet Quesnel

DATE:   April 24, 2006

PAGES:   2

COMMENTS:   Please find attached a copy of the closure document in the above-referenced case.

---

Our Mission is to make Texas an even greater place to live, work, play and raise our families by reducing discrimination in employment and housing through education and outreach programs, and through the enforcement of the Texas Commission on Human Rights Act and the Texas Fair Housing Act.

*"The Texas Workforce Commission is an Equal Opportunity Employer"*



## DISMISSAL AND NOTICE OF RIGHT TO FILE A CIVIL ACTION

| TO: Elizabeth Gilmore<br>7527 Alderly Dr<br>Spring TX 77389 | FROM: Texas Workforce Commission<br>Civil Rights Division<br>P. O. Box 13006<br>Austin, TX 78711-3006 | |
|---|---|---|
| TWCCRD Charge No.<br>1A50134-H | EEOC Charge No.<br>31CA500967 | TWCCRD Representative<br>Janet G. Quesnel |

### THE TWCCRD IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

[ ] The facts alleged in the charge fail to state a claim under any of the statutes enforced by the TWCCRD.

[ ] Your allegations did not involve a disability that is covered by the Americans with Disabilities Act or the Texas Commission on Human Rights Act.

[ ] The Respondent employs less than the required number of employees or not otherwise covered by the statutes.

[ ] We cannot investigate your charge because it was not filed within the time limits required by law.

[ ] Having been given 30 days in which to respond, you failed to provide information, failed to appear or be available for interviews/conferences, or otherwise failed to cooperate to the extent that it was not possible to resolve your charge.

[ ] While reasonable efforts were made to locate you, we were not able to do so.

[ ] You had 30 days to accept a reasonable settlement offer that afforded full relief for the harm you alleged. You failed to accept the full relief.

[X] The TWCCRD issues the following determination: Based upon its investigation, the TWCCRD is unable to conclude that the information obtained establishes any violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

### NOTICE OF RIGHT TO FILE A CIVIL ACTION

Pursuant to Sections 21.208, 21.252 and 21.254 of the Texas Labor Code, as amended, this notice is to advise you of your right to bring a private civil action in state court in the above referenced case. **PLEASE BE ADVISED THAT YOU HAVE SIXTY (60) DAYS FROM THE RECEIPT OF THIS NOTICE TO FILE THIS CIVIL ACTION.** (The time limit for filing suit based on a federal claim may be different.)

### EEOC REVIEW NOTICE

AS YOUR CHARGE WAS DUAL FILED UNDER TITLE VII OF THE CIVIL RIGHTS ACT/AGE DISCRIMINATION IN EMPLOYMENT ACT/AMERICANS WITH DISABILITIES ACT, WHICH ARE ENFORCED BY THE U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION (EEOC), YOU HAVE THE RIGHT TO REQUEST EEOC REVIEW OF THIS FINAL DECISION ON YOUR CASE. TO SECURE A REVIEW, YOU MUST REQUEST IT IN WRITING WITHIN FIFTEEN (15) DAYS OF THE RECEIPT OF THIS NOTICE. YOUR REQUEST SHOULD BE SENT TO THE U.S. EQUAL OPPORTUNITY COMMISSION OFFICE AS APPROPRIATE.

| [ ] DALLAS EEOC<br>207 SOUTH HOUSTON ST<br>DALLAS, TX 75202 | [X] HOUSTON EEOC<br>1919 SMITH ROAD, 7TH FLOOR<br>HOUSTON, TX 77002 | [ ] SAN ANTONIO EEOC<br>5410 FREDERICKSBURG RD # 200<br>MOCKINGBIRD PLAZA, PLAZA II<br>SAN ANTONIO, TX 78229 |
|---|---|---|

cc: Jane Williams, Human Resources Director
Fulbright & Jaworski, LLP
1301 McKinney #5100
Houston TX 77010

On behalf of the Commission

_____
Kay Hemphill, Team Leader
Texas Workforce Commission

MAR 21 2006
DATE

STATE OF TEXAS
COUNTY OF HARRIS

I, Charles Bacarisse, District Clerk of Harris County Texas, do hereby certify that the foregoing data is a true and correct copy of the original record, now in my lawful possession and official custody, as appears of record in my office:
a) filed on
b) recorded under
   in the Minutes of said Court
c) abstracted from the original record in my lawful possession, electronically stored in digital form and pertaining to the
   In reference to cause number
d) abstracted from the original record in my lawful possession, electronically stored in digital form pertaining to
from _____ to the present date

Witness my official hand and seal of office this
DEC 04 2006

CHARLES BACARISSE, DISTRICT CLERK
Harris County, Texas

By _____