NO. 2006-31303

| | | |
|---|---|---|
| ELIZABETH A. GILMORE, | § | IN THE DISTRICT COURT OF |
| *Plaintiff* | § § § | |
| V. | § | HARRIS COUNTY, TEXAS |
| FULBRIGHT & JAWORSKI L.L.P., | § § § | |
| *Defendant* | § | 151ST JUDICIAL DISTRICT |



### PLAINTIFF'S FIRST AMENDED ORIGINAL PETITION

COMES NOW ELIZABETH A. GILMORE, Plaintiff herein, by and through her undersigned attorney, complaining of FULBRIGHT & JAWORSKI L.L.P., Defendant herein, and for cause of action says:

### Parties

1.  PLAINTIFF ELIZABETH A. GILMORE is an individual residing in Spring, Harris County, Texas.

2.  DEFENDANT FULBRIGHT & JAWORSKI L.L.P. is, and at all times material hereto was, a limited liability partnership organized under the laws of the State of Texas. Citation was served and Defendant has answered.

### Jurisdiction

This Court has jurisdiction over Defendant because it is a Texas citizen. This Court has jurisdiction over the controversy in this case because the events giving rise to such controversy occurred in Texas.

**Venue**

Venue over the case at bar lays in Harris County, Texas, because all or a substantial part of the events, omissions, or both, giving rise to Plaintiff's claims occurred in Harris County, Texas. Tex. Civ. Prac. & Rem. Code § 15.002(a)(1).

**Statement of Facts Applicable to All Counts**

1. Following a history of various symptoms and conditions, including but not limited to, autoimmune hepatitis, a persistent skin rash, jaundice, nausea, abdominal pain, neck pain, back pain, profuse sweating, cold and heat intolerance, subjective fever, constantly feeling feverish/hot, hair loss, change in hair texture, nose bleeds, dry eyes, dry mouth, gastrointestinal problems, physical exhaustion, pain in both hips, fingernails separating from the nail beds, hand tremors, taunt veins, dizziness, short and long term memory lapses, heart palpitations, anxiety, and high blood pressure. Plaintiff, a legal secretary employed by Defendant, was diagnosed with "temporary thyroiditis" in June 2004, and toprol XL (beta blocker) was prescribed for Plaintiff's heart palpitations and high blood pressure.

2. In August 2004, because Plaintiff's symptoms persisted, additional blood work and an ultrasound of Plaintiff's thyroid were performed. Plaintiff was diagnosed with Grave's disease (autoimmune hyperthyroidism). She had a nodule on the left side of her neck. She was prescribed methimazole (an anti-thyroid medication) and lorazepam (an anti-anxiety medication). Plaintiff lost her secretarial assignment about this time. Plaintiff later became hypothyroid and became unusually emotional, crying for no reason, became constipated, had muscle cramps, and was physically exhausted. Plaintiff was started on lexapro for depression.

3. Plaintiff began short-term disability/FMLA leave and underwent surgery on or about Monday, December 20, 2004, for the removal of the thyroid nodule. Following the surgery, she was told that she did not have a right lobe or right isthmus of her thyroid, and only had a nodule on her left side that had become autonomous and was pouring triiodothyronine (T3) into her bloodstream. She was, also, told that she did not have any parathyroid glands which regulate calcium levels in the body and was likely causing her load bearing joints to ache badly, and likely why her fingernails were separating from their nail beds.

4. In January 2005, Plaintiff was taken off levothyroxine (T4 hormone replacement) and was started on levoxyl (a different T4 hormone replacement). Since she was no longer feeling depressed, she stopped taking the lexapro.

5. On Monday, January 31, 2005, Plaintiff called Brenda Pittman, her supervisor, to request a 30-day personal leave of absence.

6. Not having heard back from Brenda Pittman regarding her request for a 30-day personal leave of absence, Plaintiff called Ms. Pittman again on Thursday, February 3, 2005.

7. On February 4, 2005, late Friday afternoon, Brenda Pittman instructed Plaintiff to call Dorothy Jenkins in Human Resources regarding her request for a 30-day personal leave of absence.

8. On Monday, February 7, 2005, Plaintiff tearfully spoke with Dorothy Jenkins regarding her request for a 30-day personal leave of absence.

9. On Tuesday, February 8, 2005, Dorothy Jenkins left a voice mail message for Plaintiff stating that her request for a 30-day personal leave of absence had been granted.

10. In February 2005, Plaintiff's health problems, combined with her stopping the lexapro, caused her to suffer from major depression. She was unable to bathe herself, make a simple telephone call, leave her house, or even get out of bed. Plaintiff's hair continued to fall out, the hand tremors were uncontrollable, and she cried constantly. Going to the restroom was like traveling to another continent. She was sleeping 15 or more hours a day. A friend pointed out that Plaintiff was depressed, so she restarted taking the lexapro.

11. In March 2005, Plaintiff was feeling better but was not well enough to return to work.

12. On Friday, March 11, 2005, Plaintiff's husband called Dorothy Jenkins regarding the status of Plaintiff's health. Ms. Jenkins told Plaintiff's husband that Plaintiff had to obtain a physician's statement/authorization for additional absence time from work.[1] Plaintiff's husband told Ms. Jenkins that he would schedule an appointment for Plaintiff with her endocrinologist and would call her back with the date of such appointment. That very day, Plaintiff's husband contacted her endocrinologist's office to arrange an appointment, and was told that the endocronologist was on vacation for two weeks and that he would return to the office on Tuesday, March 15, 2005. Plaintiff's husband spoke with the endocronologist's nurse regarding Plaintiff's health status. The nurse referred her husband to a doctor specializing in hormones (a psychiatrist). Plaintiff's husband telephoned the psychiatrist's office, and left a voice mail message requesting an appointment.

13. On Monday, March 14, 2005, the psychiatrist returned Plaintiff's husband's telephone call and scheduled an appointment for Plaintiff for Tuesday, March 22, 2005.

---

[1] The policies and procedures of Defendant in place at or around this time permitted requests for extensions of employee personal leaves of absence in conjunction with short-term disability/FMLA leave.

14. On Monday, March 14, 2005, Plaintiff's husband also scheduled an appointment for her with her endocrinologist for the earliest date he could get.

15. On Tuesday, March 15, 2005, Plaintiff's husband left a voice mail message for Ms. Jenkins informing her that Plaintiff had an appointment with her endocrinologist on Monday, March 21, 2005, and informing Ms. Jenkins that that was the earliest available date for an appointment.

16. On or about Tuesday, March 15, 2005, Jane Williams, the Director of Human Resources, sent Plaintiff a letter via First-Class United States mail informing Plaintiff that she had been terminated effective that day (three business days before Plaintiff's five-year anniversary with the firm and seven business days before Plaintiff would have fallen under FMLA protection) because her FMLA leave ended on Friday, March 11, 2005,[2] and that she was unable to return to work at that time.

17. On Friday, April 22, 2005, Plaintiff left voice mail messages for Jane Williams and Brenda Pittman requesting re-hire.

18. On Tuesday, April 26, 2005, not having received a return telephone call, Plaintiff again called Jane Williams, and spoke with her, regarding re-hire. Ms. Williams said that she did not believe that the firm had any secretarial openings but that she would call Plaintiff back after speaking with Brenda Pittman, Alicia Brantley and Janet Carter (the secretarial supervisors).

19. Not having heard anything from Ms. Williams by early May, Plaintiff left a voice mail message for her asking whether a decision had been reached regarding re-hiring Plaintiff.

---

[2] Plaintiff's short-term disability/FMLA leave had, in fact, ended prior to Friday, March 11, 2005, which is why Plaintiff had requested a 30-day personal leave of absence in February.

20. In mid-July 2005, not having heard from Ms. Williams, Plaintiff called Ms. Williams and spoke with her regarding re-hiring her. Ms. Williams said that the firm did not have any available positions.[3] However, prior to contacting Ms. Williams, Plaintiff had spoken with Rhea Orr (Bill Pakalka's secretary) who told Plaintiff that she had just submitted two of her friends' résumés to Human Resources for current secretarial openings at the firm.

21. Defendant treated several other employees in the same or similar positions as Plaintiff differently than Plaintiff, including but not limited to, the following:

(a) Defendant forewarned Nancy Nichols, a night staff legal secretary, that she would be terminated if she missed any more time from work due to illness. Plaintiff received no such warning prior to termination.

(b) Defendant created a special position for Nancy Craig, a legal secretary, due to ongoing illnesses keeping her out of the office.

(c) Belle Griffith, a legal assistant, retained her position after being in and out of the office for six months at a time due to cancer.

(d) Gayle Benningfield, a librarian, retained her position and was allowed extensive time off when she was out ill for an extended period of time.

(e) Jeanne Blakely, a lead billing clerk, is allowed late arrivals and early departures to accommodate her illness.

(f) Marjorie Hines, a proofreader, was allowed years of excessive absences, late arrivals, and early departures prior to her termination and was not ill.

(g) Lois Gurnick, a legal secretary, was re-assigned to a lighter secretarial assignment which required less overtime and less stress due to her ongoing stomach illness.

(h) Colby Delgado, a legal secretary, was removed from her permanent secretarial position and returned to floater status after being forewarned that she would be terminated if she missed any additional work due to her recurrent hip problems.

---

[3] Baker Botts L.L.P. legal secretaries were being hired by Defendant during the period Plaintiff was requesting Defendant re-hire her, but Defendant informed Plaintiff there were no positions available.

22. Plaintiff's annual salary with Defendant at the time of her termination was $47,800.00.

23. Plaintiff paid $541.00/month for COBRA health insurance benefits for nine months (March 2005 to November 2005) following her termination.

### Notice of Right to File a Civil Action

1. Plaintiff satisfied all conditions precedent to filing suit, and pursued all administrative procedures to completion.

2. On or about Friday, August 26, 2005, Plaintiff timely filed a claim with the Civil Rights Division of the Texas Workforce Commission.

3. On or about Tuesday, March 21, 2006 the Civil Rights Division of the Texas Workforce Commission issued a Dismissal and Notice of Right to File a Civil Action, giving Plaintiff until at least May 20, 2006, to file suit in State court which Dismissal and Notice of Right to File a Civil Action is attached to Plaintiff's Original Petition as *Exhibit A*.

### Count One

For disparate treatment disability discrimination cause of action, Plaintiff says:

1. Plaintiff hereby adopts by reference each and every Paragraph of the Statement of Facts Applicable to All Counts of this First Amended Petition as if fully copied and set forth at length herein.

2. Defendant, among other things:

(a) discharged Plaintiff;

(b) failed or refused to re-hire Plaintiff;

  (c)  discriminated against Plaintiff in connection with the terms, conditions or privileges of employment (including, but not limited to, in not giving Plaintiff the same leave or warning of termination given to other similarly situated employees) in whole or in part because of her disability. Tex. Lab. Code § 21.051.

3. Plaintiff suffered from a disability within the meaning of the Texas Labor Code. Plaintiff suffered from a physical impairment, mental impairment, or both, that substantially limited one or more of her major life activities. Plaintiff suffered from a physiological disorder, condition, or anatomical/metabolic loss affecting her endocrine and other systems. Plaintiff suffered from Grave's disease, loss of all of her thyroid and depression. Because of one or more of these conditions, among others, Plaintiff was, among other things, unable to bathe herself, make a simple telephone call, leave her house, or get out of bed. Plaintiff's hair fell out, her hands uncontrollably trembled, and she cried constantly. Going to the restroom was like traveling to another continent. She was sleeping 15 or more hours a day. Thus, one or more of these conditions prevented Plaintiff from performing one or more major life activities that the average person in the general population can perform; or significantly restricted her as to the condition, manner or duration under which the average person in the general population could perform those same major life activities. One or more of these conditions significantly restricted Plaintiff in the ability to perform either a class of jobs or a broad range of jobs as compared to the average person having comparable training, skills and abilities.

4.  Plaintiff could have performed, and can perform, all of the essential functions of the position in question if Defendant had made reasonable accommodations for her, including but not limited to a short additional period of leave.

5.  As stated above, Plaintiff suffered an adverse employment action as a result of her disability.

6.  As described above, Defendant treated similarly situated employees differently than Plaintiff.

7.  Plaintiff's disability was a motivating factor for Defendant's adverse employment actions, more particularly described above. Tex. Lab. Code § 21.125(a).

### Count Two

For failure to make reasonable accommodation disability discrimination cause of action, Plaintiff says:

1.  Plaintiff hereby adopts by reference each and every Paragraph of the Statement of Facts Applicable to All Counts of this First Amended Petition as if fully copied and set forth at length herein.

2.  Plaintiff hereby adopts by reference Count One of this First Amended Petition as if fully copied and set forth at length herein.

3.  As more particularly described above, Plaintiff suffered from a disability within the meaning of the Texas Labor Code.

4.  Defendant had notice of Plaintiff's disability.

5. With reasonable accommodation, Plaintiff could have performed the essential functions of the job in question, including but not limited to a short additional period of leave.

6. Defendant failed and refused to make the reasonable accommodation.

7. The accommodation would not have posed an undue hardship on the operation of Defendant's business. Tex. Lab. Code § 21.128(a).

### Count Three

For violation of the Family Medical Leave Act of 1993, Plaintiff says:

1. Plaintiff hereby adopts by reference each and every Paragraph of the Statement of Facts Applicable to All Counts of this First Amended Petition as if fully copied and set forth at length herein.

2. Defendant wrongfully discriminated against/discharged Plaintiff in violation of the Family and Medical Leave Act of 1993 (hereinafter "the Act"), 29 U.S.C. Section 2601, *et. seq.*; 29 CFR Part 825. Plaintiff and her husband were attempting in March 2005 to obtain certification from Plaintiff's physician of her ability/inability to work/return to work in compliance with the Act's requirements as well as Defendant's own internal requirements to return to work. Plaintiff's husband, on Plaintiff's behalf, informed Defendant by March 15, 2005, that Plaintiff's endocrinologist was on vacation so the earliest possible appointment available with the endocrinologist was Tuesday, March 22, 2005. Plaintiff's husband, on Plaintiff's behalf, also informed Defendant by March 15, 2005, that Plaintiff had an appointment with a doctor specializing in hormones (a psychiatrist) on Monday, March 21, 2005. Plaintiff was operating in a "timely manner" to obtain this certification and was specifically within the "15 day" definition of "timely

manner" set forth in the Act's CFR 630.1201, as well as the identical 15-day internal requirement of Defendant. (*See* Defendant's document "Response to Request for Family or Medical Leave"). Indeed, although Plaintiff was well within the 15-day requirement herein, in reality, with her doctor on vacation, Plaintiff would have been able to avail herself of a longer time frame for compliance if she had needed it pursuant to the Act's specific language that " . . . (i)f it is not practicable under the particular circumstances to provide the requested medical certification no later than 15 calendar days . . . despite the employee's diligent, good faith efforts, the employee must provide the medical certification within a reasonable period of time under the circumstances involved . . . ." 5 CFR 630.1201. Despite all of this, Defendant terminated Plaintiff on March 15, 2005, knowing full well at that time that Plaintiff was diligently attempting to perfect her rights under the Act and obtain the required certification only six or seven days later at her March 21, 2005 and/or March 22, 2005 doctors' appointments.

      3.     Indeed, there was an absolute wrongful, abysmal "rush" to fire Plaintiff on March 15, 2005, in violation of the Act as Defendant was purely motivated by financial concerns for itself, as opposed to any compassion, fairness, and human interest in a long-time, dutiful, faithful, hard-working employee who had had the extreme misery and misfortune of becoming severely ill. That is, Plaintiff was to re-qualify for 12 weeks under the Act within several days after March 15, 2005, shortly after her five-year anniversary of her employment, and she was also at that same time to obtain six weeks of short-term leave of absence as well as five weeks of vacation pay. Defendant knew this would have allowed Plaintiff 11 weeks of additional paid leave under the Act if she had subsequently needed it. Additionally, Defendant was in fear that if Plaintiff did not return to work

but was still an employee, long-term disability would become available to her. Thus, despite the fact that Plaintiff was diligently complying with the certification requirements, and her husband had informed Defendant of this compliance and of the pending, imminent doctors' visits scheduled for Monday, March 21, 2005, and Tuesday, March 22, 2005, Defendant wrongfully terminated Plaintiff on March 15, 2005. In reality, Defendant's selfish, soulless fears of only financial concerns for itself proved totally unfounded. That is, by the end of March 2005, Plaintiff's physician had certified that Plaintiff was able to return to work. Despite the fact that Plaintiff informed Defendant of this and requested her job back, Defendant steadfastly refused to right its wrong and re-hire her. Subsequently, Plaintiff through almost seven months of diligent, continuous efforts found new work, has been steadily employed, and is now in a full-time position with another law firm commensurate to the work she was doing for Defendant.

    4.     Defendant's steadfast mistreatment of Plaintiff violated the Act and specifically Section 105 contained therein. That is, Defendant interfered with, restrained, and denied the exercise of, attempt to exercise, Plaintiff's rights under the Act, discharged/discriminated against Plaintiff for opposing Defendant's practices made unlawful by the Act, and discharged/discriminated against Plaintiff due to Plaintiff instituting proceedings related to the Act/giving information related to her rights under the Act. Plaintiff's damages as a result of Defendant's wrongful conduct under the Act are set forth below in the "Damages Applicable to Count Three" paragraph.

## Damages Applicable to Counts One and Two

1. Plaintiff hereby adopts by reference each and every Paragraph of the Statement of Facts Applicable to All Counts of this First Amended Petition as if fully copied and set forth at length herein.

2. Plaintiff hereby adopts by reference Count One of this First Amended Petition as if fully copied and set forth at length herein.

3. Plaintiff hereby adopts by reference Count Two of this First Amended Petition as if fully copied and set forth at length herein.

4. By reason of the above conduct of Defendant, Plaintiff seeks the following relief, among other relief:

    (a) back pay;

    (b) interest on back pay;

    (c) the cost of health insurance;

    (d) compensatory damages, including but not limited to, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life and other non-pecuniary losses;

    (e) pre-judgment interest;

    (f) punitive damages;

    (g) court costs;

    (h) reasonable attorney's fees; and

    (i) reasonable expert fees.

3.    Plaintiff hereby adopts by reference Count Two of this First Amended Petition as if fully copied and set forth at length herein.

4.    Plaintiff hereby adopts by reference Count Three of this First Amended Petition as if fully copied and set forth at length herein.

5.    As more particularly described above, Defendant engaged in an unlawful intentional employment practice. Tex. Lab. Code § 21.2585(a).

6.    As more particularly described above, Defendant engaged in the above discriminatory practices with malice or reckless indifference to Plaintiff's state protected rights as well as Defendant's own policies and procedures.

7.    By reason of the above and foregoing circumstances, Plaintiff seeks recovery of punitive damages.

### Request for Jury Trial

Plaintiff hereby requests a jury trial.

Respectfully submitted,

By: /s/ Randal Kauffman
Randal A. Kauffman
State Bar No. 10050700
P.O. Box 1211
Tomball, Texas 77377-1211
Telephone: (281) 290-9759
Facsimile: (281) 357-0745

**Attorney For Plaintiff**

-15-

## CERTIFICATE OF SERVICE

I hereby certify that a duplicate of the above and foregoing Plaintiff's First Amended Petition was served upon all opposing parties, or their attorneys of record, by either certified mail, return receipt requested, hand delivery, or telephonic document transfer, on the /7th day of November, 2006.

Lawrence H. Clore                                                                 *Hand Delivery*
David B. Jordan
Fulbright & Jaworski LLP
1301 McKinney, Suite 5100
Houston, Texas 77010-3095

*Randal Kauffman*
Randal A. Kauffman

STATE OF TEXAS
COUNTY OF HARRIS

I, Charles Bacarisse, District Clerk of Harris County, Texas, do hereby certify that the foregoing data is a true and correct copy of the original record, now in my lawful custody and possession as appears of record in
a) filed on
b) recorded under
in the
c) abstracted from the original record of my lawful possession, electronically stored in digital form and pertaining to the
in reference to cause number
d) abstracted from the original record in my lawful possession, electronically stored in digital form pertaining to
from _____ to the present date

Witness my official hand and seal of office this

 DEC 04 2006

CHARLES BACARISSE, DISTRICT CLERK
Harris County, Texas

By _____